<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROD C., | Civil Action No. 20-14718 (SDW) |
| Plaintiff, | **OPINION** |
| v. | January 6, 2022 |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Rod C.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

   A.    **Procedural History**

Plaintiff filed DIB and SSI applications on November 30, 2016, alleging disability beginning on June 23, 2016, due to congestive heart failure, diverticulitis, high blood pressure, shaken leg syndrome, atrial fibrillation, arthritis, and a colon infection. (*See* D.E. 7 (Administrative Record ("R.")) at 10, 160–69, 207.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 45–88.) Plaintiff received a hearing before ALJ West on April 26, 2019, but did not appear. (R. 10, 31–36, 156.) However, Plaintiff's attorney appeared at the hearing, as did an impartial vocational expert, Tanya Edghill ("VE Edghill"). (R. 10.) The ALJ issued a written decision on June 24, 2019, finding that Plaintiff was not disabled, and the Appeals Council denied review on August 20, 2020. (R. 1–3, 10–18.) Plaintiff subsequently filed the instant appeal in this Court, and the parties completed briefing. (D.E. 1, 11, 14, 15.)[2]

   B.    **Factual History**

Plaintiff is 57 years old and has a high school diploma and some college education. (*See* R. 16, 160.) He previously worked as a metal fabricator (or welder fabricator), which is skilled work performed at a heavy level of exertion. (R. 16, 199–200.) The following is a summary of the relevant medical evidence in the record.

In May 2016, a month before Plaintiff's alleged disability began, Plaintiff saw his cardiologist, Sameer Kaul, M.D., at Cardiology Center of New Jersey. (R. 390–91.) The purpose of Plaintiff's visit was a routine follow-up for his history of atrial fibrillation and nonischemic cardiomyopathy. (R. 390.) According to Dr. Kaul's summary of the visit, Plaintiff was "quite

---

[2] Although Plaintiff filed a late reply brief, (D.E. 15), this Court will consider it.

well," "quite active," and "fully employed," and he "denie[d] any symptoms." (*Id.*) Dr. Kaul noted that Plaintiff's ejection fraction "ha[d] improved from 2014 when it was 35% to 40% to now 50% to 55%, almost in the normal range." (*Id.*)[3] Dr. Kaul advised Plaintiff to continue his medication regimen, including Coumadin and Clonidine. (R. 390–91.)[4,5]

At a follow up appointment in November 2016, Dr. Kaul was concerned about Plaintiff's noncompliance; he had stopped taking medications for two to three weeks and was still smoking cigarettes. (*See* R. 392.) Although Plaintiff's health insurance had lapsed for a short period, he was now on Medicaid and able to resume his prescriptions. (*Id.*) His blood pressure was 190/132, but after receiving medication, it dropped to normal range. (*Id.*) Plaintiff's ejection fraction had decreased to 35%–40%, with increased left ventricular hypertrophy, and Dr. Kaul therefore had "a long discussion with him" about medication compliance and disease progression. (*Id.*)

From October to December 2016, Plaintiff also saw Dr. Samuel Banigo, M.D., who diagnosed Plaintiff with congestive heart failure and diverticulitis based on physical examination and CAT scan studies. (R. 405.) In December 2016, Dr. Banigo completed a medical certificate for Plaintiff, opining that Plaintiff was disabled beginning on October 3, 2016, and estimating that Plaintiff could recover and return to work by October 3, 2017. (R. 405–08.) However, the record contains only this certificate from Dr. Banigo, and is devoid of any other explanation or treatment notes from Dr. Banigo to support his disability determination.

---

[3] Ejection fraction is a measurement of the percentage of blood leaving the heart's left ventricle each time it contracts. *See Ejection Fraction: What Does It Measure?* Mayo Clinic, https://www.mayoclinic.org/tests-procedures/ekg/expert-answers/ejection-fraction/faq-20058286 (last visited Jan. 3, 2022).

[4] Coumadin, a brand name for warfarin, is prescribed to prevent blood clots, which can be caused by an irregular heart rhythm (atrial fibrillation). *See Coumadin – Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-4069/coumadin-oral/details (last visited Jan. 3, 2022).

[5] Clonidine is prescribed to treat hypertension. *See Clonidine (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/clonidine-oral-route/description/drg-20063252 (last visited Jan. 3, 2022).

Also in December 2016, Plaintiff was hospitalized at Newark Beth Israel Medical Center for abdominal pain and gastrointestinal bleeding. (R. 366.) A CT scan of his abdomen showed diverticulitis with abscess. (R. 366.) Doctors did not recommend surgical intervention, but they did advise a colonoscopy once his colon edema subsided. (R. 366.) After a course of antibiotics, Plaintiff reported "feel[ing] much better." (*Id.*) While he was hospitalized, an echocardiogram showed a visually estimated ejection fraction of 30%–35%. (R. 376.) Plaintiff was diagnosed with hypertension and atrial fibrillations and advised to continue Coumadin. (R. 366, 368.)

Plaintiff received his colonoscopy in January 2017 and sought emergency room treatment a few days later for rectal bleeding, at Newark Beth Israel Medical Center. (R. 444.) He reported intermittent and mild abdominal pain that he described as cramping. (R. 448.) An abdominal CT scan showed diffuse colonic diverticulosis without evidence of acute diverticulitis, and an esophagogastroduodenoscopy showed a stomach ulcer. (R. 456–57, 469.) Doctors prescribed Protonix. (R. 456.) Plaintiff's treatment course was "[u]neventful with improvement in symptoms," and he was discharged three days later in stable condition. (R. 443.)

Plaintiff returned to Dr. Kaul in February 2017. (R. 479.) Plaintiff was "doing quite well" and "denie[d] any symptoms." (*Id.*) Dr. Kaul noted that Plaintiff's blood pressure was "well controlled" on medication, and that he was taking all of his medications. (*Id.*)

In July 2017, Plaintiff sought emergency room treatment at Clara Maass Medical Center for left-sided facial numbness. (R. 410.) He denied other symptoms such as chest pain, headache, vomiting, shortness of breath, dyspnea, and abdominal pain. (*Id*.) Plaintiff's blood pressure was high, and he stated that he had not taken his medications for two weeks due to financial issues. (R. 410, 416.) Plaintiff was admitted to the ICU, diagnosed with hypertensive crisis, and treated. (*See* R. 409–34.) Plaintiff's echocardiogram showed low normal ejection fraction of 50%–55% and

4

normal left ventricle size. (R. 432.) He was discharged four days later. (R. 410.) He sought emergency treatment a week later at Newark Beth Israel Medical Center after fainting, but he was treated and discharged the same day. (R. 473–74.)

Plaintiff saw Dr. Kaul again in August 2017. (R. 478.) Dr. Kaul suspected that Plaintiff's July hospital visits for "uncontrolled hypertension" resulted from his being "noncompliant with some of his antihypertension medications." (*Id.*) Plaintiff confirmed that he "[u]sually" missed his dose of Clonidine. (R. 478.) Nevertheless, "his echocardiogram in the hospital showed a normal ejection fraction of 50-55% which show[ed] that he had improved or responded to his treatment." (*Id.*) Dr. Kaul "advised him to be more compliant with his medications since the response of medications to his cardiomyopathy ha[d] been excellent." (*Id.*)

Separately, state agency experts Elois Phillips, M.D., and Jose Rabelo, M.D., reviewed Plaintiff's medical record in February and September 2017, respectively. (R. 50–53, 70–73.) Both physicians opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand and walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push/pull without limitation. (*Id.*)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the

record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

7

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. <u>DISCUSSION</u>

#### A.   The ALJ's Decision

On June 24, 2019, ALJ West issued a decision concluding that Plaintiff was not disabled from June 23, 2016 (the "alleged onset date") through the date of the decision. (R. 10–18.) At

step one, the ALJ found that Plaintiff had worked since his alleged onset date, but his earnings were too low for his work to be considered substantial gainful activity. (R. 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure, atrial fibrillation, hypertension, and diverticulitis. (R. 13.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (*Id.*) In particular, Plaintiff did not meet the requirements of Listing 4.02 for chronic heart failure. (*Id.*) For this listing, a claimant must prove, *inter alia*, that his heart has an enlarged left ventricle or an ejection fraction rate of less than 30% during a period of stability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02(A). Based on Plaintiff's medical records, ALJ West found that Plaintiff's left ventricle was of normal size and his ejection fraction was 50%–55%. (R. 13.)

Assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work, except (1) he could not climb stairs, ropes, or scaffolds; (2) he could perform other postural functions only occasionally; (3) he was to avoid concentrated exposure to extreme cold and heat, wetness, and humidity; and (4) he was to avoid dangerous machinery and unprotected heights. (R. 13–16.)

At step four, the ALJ found that someone with Plaintiff's RFC could not perform Plaintiff's past job as a metal fabricator. (R. 16.) At step five, the ALJ relied on VE Edghill's testimony to find that Plaintiff could work as a labeler, mail sorter, or produce weigher—jobs that existed in significant numbers in the national economy. (R. 17.) ALJ West therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 17–18.)

B. Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 11 at 20.) Plaintiff contends that ALJ West failed to (1) properly consider the objective medical

evidence to determine whether Plaintiff's cardiac impairment met a listing; (2) properly consider Plaintiff's subjective complaints; and (3) properly assess or explain Plaintiff's RFC. (*See id.* at 14–20.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff contends that the ALJ's determination that his cardiac impairment did not meet a listing "is not supported by the objective medical evidence." (*Id.* at 11.) The listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose impairments are so severe that they are presumed disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 532–33 (1990). The listings define impairments that would prevent an adult from performing any gainful activity, not just substantial gainful activity, and their criteria are therefore set at a higher level than the statutory standard for disability. *See id.* (citations omitted). The claimant has the burden of proving a presumptively disabling impairment under the listings by presenting medical findings that either meet all of the criteria of a listed impairment or are equal in severity to all of the criteria for a listed impairment. *Id.* at 531 (citations omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

Here, Listing 4.02 requires, *inter alia*, that the claimant's heart have an enlarged left ventricle or an ejection fraction rate of less than 30% during a period of stability. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02(A); *see also id.* § 4.02 (explaining that the claimant must satisfy the requirements of both paragraphs A and B to meet the listing). The ALJ explained that Plaintiff's cardiovascular disease did not satisfy the requirements of Listing 4.02 because objective testing showed his left ventricle size was normal and his ejection fraction was above listing-level severity, most recently measured at 50%–55%. (R. 13, 432–33, 478.) Instead of explaining how he meets these requirements, Plaintiff cites to the introductory section of the cardiac listings, (*see* D.E. 11 at 11–12), but this language is not a listing that Plaintiff can satisfy. *See* 20 C.F.R. §§ 404.1525(c)

and 416.925(c) (distinguishing between "introduction[s]" and "specific listings" in "body system sections"). Plaintiff also cites to visual estimates of his ejection fraction of 30%–35% from December 2016 and January 2017. (D.E. 11 at 12–13; *see* R. 376.) However, these percentages are higher than the threshold listing level of 30% or less, were only estimates, and occurred during an acute exacerbation of his cardiac condition rather than a "period of stability," as required by Listing 4.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02(A). Plaintiff's ejection fraction was 50%–55% in May 2016, 35%–40% in November 2016, and 50%–55% in July 2017. (R. 390, 392, 432–33, 478.) As his cardiologist, Dr. Kaul, explained, Plaintiff's cardiac response to medications was "excellent," and his ejection fraction improved to ""normal." (R. 478.) Plaintiff also routinely denied cardiac symptoms to his treating providers, including Dr. Kaul. (*See, e.g.*, R. 368, 390, 410, 444, 479.) The ALJ thus reasonably concluded that Plaintiff's cardiac condition did not meet or medically equal the severity of Listing 4.02.

Second, Plaintiff argues that the ALJ failed to properly consider his subjective complaints. (*See* D.E. 11 at 14–17; D.E. 15 at 1–2.) In support of his subjective complaints, Plaintiff generally cites a pain questionnaire and a chest pain questionnaire that he completed on May 29, 2017, in connection with his applications for DIB and SSI. (R. 227–33.) However, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citation omitted). An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted); *see also* 20 C.F.R. §§ 404.1529 and 416.929; Social Security Ruling 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "Overturning an ALJ's credibility determination is an

extraordinary step, as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety and Health Review Com'n*, 532 F. App'x 309, 312 (3d Cir. 2013) (citation and internal quotation marks omitted).

Here, the ALJ explained that the alleged "intensity, persistence, and limiting effects" of Plaintiff's symptoms were not entirely consistent with the medical evidence and other record evidence. (R. 14–16.) For example, the ALJ considered Plaintiff's work activity during the alleged disability period, as one of multiple considerations, in finding that Plaintiff's impairments did not cause limitations to the extent that he alleged. (R. 14); *see* 20 C.F.R. §§ 404.1571 and 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *see also Sigmon v. Califano*, 617 F.2d 41, 42–43 (4th Cir. 1980) ("The general rule is one amply supported by common sense: the [Commissioner] can consider work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then disabled." (citation omitted)).

The ALJ additionally analyzed Plaintiff's subjective complaints regarding his cardiac condition, blood pressure, headaches, diverticulitis, and medication side effects. The ALJ explained that Plaintiff's cardiac condition, as described by his treating cardiologist, demonstrated "excellent" response to medication and his ejection fraction returned to within normal limits of 50%–55%. (R. 15, *see* R. 478.) In considering Plaintiff's blood pressure, the ALJ noted that Dr. Kaul had found that his blood pressure was "well controlled" on medication. (R. 15, 478–79.) Although there were episodes of hypertension that caused hospitalization, these occurred when Plaintiff was not compliant with medication, and his blood pressure always improved when he resumed medicating. (R. 14–15, 392, 410, 416, 472, 478.) Plaintiff was only treated on a single occasion for a headache, about eleven months before the relevant time period and in the context

of high blood pressure. (R. 348–50.) Once he was given medication, both his blood pressure and headache improved and he was discharged the same day. (*Id.*) In considering Plaintiff's diverticulitis, the ALJ found that it did not result in disabling work-related limitations because Plaintiff generally reported that his diverticulitis caused him only mild pain. (R. 15, 448.) In considering alleged medication side effects, the ALJ noted that Plaintiff only reported these on a form in connection with his disability application and did not mention them to his treatment providers. (*See* R. 14 (citing R. 241), 479.) Based on these inconsistencies, ALJ West found "no evidentiary basis for [a] more restrictive [RFC]." (R. 16.) On review, this Court finds that the ALJ sufficiently evaluated Plaintiff's subjective complaints and will therefore give the ALJ's credibility determinations the deference they are due.

Third, Plaintiff argues that the ALJ's RFC assessment was unexplained and unsupported by the evidence, citing primarily to Dr. Banigo's medical certificate and the pain questionnaires that Plaintiff completed in connection with his applications for benefits. (D.E. 11 at 17–20; D.E. 15 at 2–3.) "[T]here is no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ. No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Here, in assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. The ALJ gave less weight to Plaintiff's subjective complaints, as disclosed in his pain questionnaires, for the reasons discussed above. He also gave less weight to Dr. Banigo's December 2016 medical certificate, which estimated recovery by October 2017 and was devoid of any explanation or treatment notes from Dr. Banigo to support his disability determination. (R. 16, 405–08.) With respect to Plaintiff's ability to lift, carry, stand,

14

and walk, the ALJ afforded great weight to the opinions of Drs. Phillips and Rabelo, who opined that Plaintiff could frequently lift ten pounds, occasionally lift 20 pounds, and stand/walk for six hours in an eight-hour workday consistent with the demands of light work. (R. 15–16, 50–53, 70–73.)

Plaintiff suggests that the ALJ's RFC for a range of light work is inconsistent with a finding that Plaintiff can only stand or walk occasionally. (*See* D.E. 11 at 18–20; D.E. 15 at 2–3.) But the ALJ made no such finding. The ALJ accepted the opinions of Drs. Phillips and Rabelo that Plaintiff could stand/walk for six hours in an eight-hour workday, and appropriately found that Plaintiff can perform light work subject to some exceptions. (R. 13, 15–16, 50–52, 70–73.) Among those exceptions, ALJ West found that Plaintiff can perform certain "postural functions [only] occasionally," (R. 13), but postural functions do not include standing or walking. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *6–7 (S.S.A. July 2, 1996) (explaining that postural restrictions are non-exertional and include climbing, balancing, kneeling, crouching, and crawling, whereas standing and walking are exertional). The ALJ's RFC finding is therefore internally consistent and supported.

Upon reviewing the ALJ's decision and the medical record as a whole, as well as Plaintiff's own work history during the alleged period of disability, it is clear that Plaintiff's health issues are controlled with medication when he chooses to comply and that he is able to perform a range of light work. Substantial evidence—*i.e.*, more than a mere scintilla of evidence—supports the ALJ's decision and this Court will therefore affirm.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.


<u>s/ <i>Susan D. Wigenton</i></u><br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Parties